# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES H. SIMS,<br><br>        Plaintiff,<br><br>   v.<br><br>JEANNE WOODFORD, et al.,<br><br>        Defendants.<br>_____ / | CASE NO. 1:05-CV-01523 LJO DLB PC<br><br>ORDER GRANTING EXTENSION OF TIME TO FILE MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 72)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT BE GRANTED, THUS CONCLUDING THIS ACTION IN ITS ENTIRETY<br><br>(Docs. 73, 75)<br><br>OBJECTIONS DUE WITHIN FIFTEEN DAYS |

**Order**

    On April 23, 2009, Defendants Guinn, Mendoza-Powers, Lawhorn, Cotta and Escobar ("Defendants") filed a request to extend time to file a motion for summary judgment. (Doc. 72.) Plaintiff James Sims ("Plaintiff") did not file an objection.

    Good cause appearing, the request for a four day extension of time, up to and including April 27, 2009 is granted, and the motion for summary judgment, filed April 24, 2009, is deemed timely.

///
///
///
///

**Findings and Recommendations on Defendants' Motion for Summary Judgment**

## I. Procedural History

Plaintiff is a former state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's amended complaint, filed November 17, 2006. (Doc. 18.) By order issued March 30, 2008, Plaintiff's claim for violation of the Equal Protection Clause was dismissed. (Doc. 43.) Defendants Arnold and Woodford were also dismissed from the action. Id.

Now pending before the Court is Defendants motion for summary judgment, filed April 24, 2009. (Doc. 73.) Despite obtaining two extensions of time, Plaintiff has not filed an opposition.[1] The motion is deemed submitted.

## II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on January 26, 2007. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 23.)

2

of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record they wish the Court to consider. Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The Court will not undertake to mine the record for triable issues of fact. Id.

**III.    Undisputed Facts ("UF")**

1. Plaintiff has multiple criminal convictions for driving under the influence ("DUI"), robbery, burglary, and assault, and has served multiple terms with the California Department of Corrections ("CDCR").

2. The Federal Bureau of Investigation ("FBI") Criminal Identification and Information ("CI&I") report states that on September 3, 1976, Plaintiff was convicted of violating California Penal Code section 220, assault with intent to commit rape.

3. In 1976, California Penal Code section 220 provided: "Every person who assaults another with intent to commit rape, sodomy, mayhem, robbery or grand larceny, is punishable by imprisonment in the state prison not less than one year nor more than

1 20 years."[2]

4. Today, California Penal Code section 220 only addresses assault with intent to commit sex offenses.

5. On October 25, 2004, Plaintiff returned to custody with the CDCR for a DUI conviction, entering the North Kern State Prison Reception Center ("Reception Center").

6. The Reception Center determined Plaintiff's initial classification.

7. In determining Plaintiff's initial classification, the Reception Center correctional counselor staff completed the Institutional Staff Recommendation Summary, which compiles all information known about the inmate and makes a recommendation as to which institution is appropriate for housing and programming, including review of the FBI CI&I report.

8. As a result of FBI CI&I report noting a conviction for Penal Code section 220, assault with intent to commit rape, Plaintiff's placement score carried a Mandatory Placement Score of 19 for (E) SEX, consistent with a Level II institution placement.

9. As a result of the reported assault with intent to commit rape conviction, the Reception Center further noted an R suffix, meaning it applied the R suffix to Plaintiff.

10. A Classification Staff Representative ("CSR") then reviewed Plaintiff's file and endorsed application of the R suffix, which is required for official application of the R suffix.

11. An R suffix means that the inmate cannot be housed in less than a Level II institution, cannot work outside of the secured perimeter, and is ineligible for family visits.

12. Family visiting refers to extended, overnight visits between the inmate and his wife and can also include his children.

13. An inmate with an R suffix can still visit with family members through regular visitation.

---

[2] Defendants' requests for judicial notice, filed April 24, 2009, are granted. (Doc. 75.)

14. In January 2005, Plaintiff was transferred to Avenal State Prison ("Avenal"), a level II facility.

15. On January 14, 2005, Plaintiff was given written notice that he would be appearing before a Classification Committee on January 18, 2005.

16. On January 18, 2005, Plaintiff appeared before the Facility III Unit Classification Committee ("UCC") to determine appropriate housing and programming while at Avenal.

17. This UCC consisted of Facility Captain Griffith, Dr. Force, and Defendants Cotta and Guinn.

18. The UCC noted Plaintiff had a conviction history of assault with the intent to commit rape.

19. The UCC maintained the R suffix.

20. Plaintiff was told that the R suffix meant that he would not be able to work outside of the prison or have overnight family visits.

21. The R suffix did not have any impact on Plaintiff's ability to visit with his family in the visiting hall.

22. Plaintiff's family did not come visit him because he told them not to.

23. On January 31, 2005, Plaintiff submitted a 602 inmate appeal concerning Avenal UCC's application of the R suffix to Plaintiff.

24. Plaintiff's inmate appeal sought to have the sex offense conviction removed from his prison file and have his classification reduced to minimum custody.

25. Plaintiff's inmate appeal skipped the first level of review, and Defendant Mendoza-Powers provided the second level of review on June 8, 2005.

26. Plaintiff received a copy of Defendant Mendoza-Powers' response to Plaintiff's 602 appeal on, or around, June 8, 2005.

27. Defendant Mendoza-Powers' review of Plaintiff's 602 appeal noted that Plaintiff's central file had been reviewed and that the documentation in his central file reported that, per the FBI, Plaintiff had been convicted of violating Penal Code section 220,

assault with intent to commit rape. Defendant Mendoza-Powers's response to Plaintiff's 602 appeal further noted that while Plaintiff had submitted an abstract of judgment for the 1976 conviction, it appeared to contain a typographical error in it insofar as it reported a conviction for assault with intent to commit robbery under Penal Code section 220 because Penal Code section 220 addresses assault with intent to commit rape.

28. Defendant Mendoza-Powers consequently denied Plaintiff's 602 appeal and maintained application of the R suffix.

29. On July 25, 2005, in response to an inquiry from Plaintiff, a judge wrote to Avenal's inmate records, noting Plaintiff had been convicted of assault with intent to commit robbery under California Penal Code section 220 in 1976. The Los Angeles Superior Court judge responded by letter and explained that Penal Code section 220 has changed since 1976 but at that time it addressed assault with intent to commit sex offenses and robbery.

30. Plaintiff admits he never showed the Los Angeles Superior Court letter to Defendants Cotta, Guinn, or Mendoza-Powers.

31. Defendant Escobar first became aware of Plaintiff in or around August 2005.

32. Because Plaintiff was so adamant that he had not been convicted of a sex offense, Defendant Escobar began researching the issue in August 2005.

33. Defendant Escobar's research revealed that the language of California Penal Code section 220 had changed since 1976 in that it currently only addresses assault with intent to commit sex offenses but in 1976 included assault with intent to commit robbery.

34. In or around the beginning of October 2005, Defendant Escobar received information revealing that Plaintiff had never been convicted of a sex offense.

35. On October 25, 2005, Plaintiff reappeared before the Facility VI UCC.

36. The October 2005 Facility VI UCC consisted of Defendants Escobar and Lawhorn and Correctional Counselor II Arnold.

37. The October 2005 Facility VI UCC discussed and noted the findings of Defendant Escobar's research and removed the R suffix.

38. On February 2, 2006, Plaintiff paroled.

39. On March 4, 2007, Plaintiff was discharged from CDCR's custody.

40. Plaintiff's only complaint against Defendants is that they failed to remove the R suffix sooner.

41. As a result of the R suffix, Plaintiff complains he received a higher classification score, could not have family visitation, could not work outside the secured perimeter, and he was afraid of being assaulted by other inmates.

42. Plaintiff does not have any evidence that any of the Defendants intentionally applied an R suffix to Plaintiff knowing Plaintiff had not been convicted of a sex crime.

43. Plaintiff was not assaulted or physically harmed by anyone while at Avenal.

### IV. Summary of Plaintiff's Claims

The events giving rise to this action occurred in 2004 through 2005. Plaintiff alleges that in October 2004 he was received into North Kern State Prison for a conviction for driving under the influence. (Doc. 18, Amended Complaint, ¶15.) On January 6, 2005, Plaintiff was transferred to Avenal. (Id., ¶16.) On January 18, 2005 he attended an Initial Unit Classification Committee ("UCC"), where Defendants Cotta and Gunn wrongly classified him as a convicted sex offender. (Id., ¶17.) Plaintiff filed an inmate grievance, which was denied by Defendant Mendoza-Powers at the second level of review. Plaintiff alleges that his correctional counselor Defendant Escobar failed to assist or acknowledge Plaintiff's concerns. (Id., ¶25.)

#### A. Due Process Claim

Plaintiff alleges that he was not given 72 hours notification of an adverse act being taken prior to the January 18, 2005 hearing.[3] (Id., ¶28.) Plaintiff thus alleges a violation of due process.

---

[3] Plaintiff also alleges that Defendants had no evidence to justify his classification as a convicted sex offender. (Doc. 18, ¶29.) To the extent that Plaintiff is attempting to assert a separate substantive due process claim, which is not addressed in the instant motion for summary judgment, "the concept of substantive due process . . . forbids the government from depriving a person of life, liberty, or property in such a way that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (citation and internal quotation marks omitted). To establish a claim, Plaintiff

7

### 1. Defendants' Motion

Defendants argue that they are entitled to summary adjudication on the due process claims alleged against them because: i) Plaintiff does not have a constitutional right to a particular classification, to be housed in a particular institution, or to have family visitation; ii) the imposition of an R suffix did not infringe upon Plaintiff's relationship with his family; and iii) Plaintiff was provided with all due process to which he was entitled.

Defendants argue that despite the R suffix, Plaintiff did not suffer any mandatory or coercive treatment. Defendants submit evidence that Plaintiff received a higher classification score, could not have family visitation, could not work outside the secured perimeter, and he was afraid of being assaulted by other inmates. (UF 41.) Defendants argue that none of these deprivations confers a liberty interest so as to give rise to any due process protections.

Furthermore, Defendants argue that the imposition of the R suffix did not infringe upon Plaintiff's relationship with his family. Defendants submit evidence that Plaintiff was told that the R suffix meant that he would not be able to work outside of the prison or have overnight family visits. (UF 20.) The R suffix did not have any impact on Plaintiff's ability to visit with his family in the visiting hall. (UF 21.) Plaintiff's family did not come visit him because he told them not to. (UF 22.)

Finally, Defendants argue that Plaintiff was provided with all the due process he was entitled. Defendants submit evidence that he was given four days notice before the initial UCC at Avenal. (UF 14.) Defendants also submit evidence that the Reception Center, and not any of the named Defendants, applied the R suffix to Plaintiff. (UF 5-10.)

### 2. Discussion

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for

---

"must, as a threshold matter, show a government deprivation of life, liberty, or property." Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007) (quoting Nunez at 871). "The Due Process Clause takes effect only if there is a *deprivation* of a protected interest." Nunez at 874 (emphasis in original).

Any such claim fails based on the Court's finding, discussed herein, that there was no deprivation of a protected interest. Further, the evidence does not demonstrate that Defendants exercised power without reasonable justification in the service of a legitimate governmental objective. County of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998) (citations and quotation marks omitted); (UF 5 - 10, 18).

8

deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).

The Due Process Clause itself does not confer on inmates a liberty interest in a particular classification status. See Moody v. Daggett, 429 U.S. 78, 88, n.9 (1976). The existence of a liberty interest created by state law is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Under certain circumstances, labeling a prisoner with a particular classification may implicate a liberty interest subject to the protections of due process. Neal v. Shimoda, 131 F.3d 818, 827 (9th Cir. 1997) ("[T]he stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections."). However, the assignment of an "R" suffix and the resulting increase in custody status and inability to work outside the prison simply do not "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; Neal at 830; Cooper v. Garcia, 55 F.Supp.2d 1090, 1101 (S.D. Cal. 1999); Johnson v. Gomez, No. C95-20717 RMW, 1996 WL 107275, at *2-5 (N.D. Cal. 1996); Brooks v. McGrath, No. C 95-3390 SI, 1995 WL 733675, at *1-2 (N.D. Cal. 1995).

In addition, Plaintiff does not have a liberty interest in overnight, extended visits with his family arising under the Constitution. Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460-61 (1989) (no absolute right to unfettered visitation); Toussaint v. McCarthy, 801 F.2d 1080, 1113 (9th Cir.1986) (contact visitation); Hernandez v. Coughlin, 18 F.3d 133, 137 (2nd Cir.1994) (conjugal visitation); Overton v. Bazzetta, 539 U.S. 126, 136-37(2003) (upholding prison regulation that subjected inmates with two substance-abuse violations to ban of at least two years on visitation with those outside the prison, subject to their right to apply for a lifting of ban after two years), citing Sandin, 515 U.S. at 485. Furthermore, Plaintiff has not filed an opposition to the motion and cites

to no state regulation under which a liberty interest may be conferred.

Even assuming for the sake of argument that a liberty interest exists, Defendants are still entitled to summary judgment on Plaintiff's due process claim. The evidence shows that Plaintiff was given written notice four days prior to the hearing. (UF 15, 16.) Plaintiff's allegation that he was denied advance notice of the hearing is disproved by the uncontested evidence submitted by Defendants. Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claim alleging a violation of due process.

### B.     Eighth Amendment Claims

Next, Plaintiff claims an infringement of the Eighth Amendment prohibition against cruel and unusual punishment based on the "R" suffix designation. It appears that Plaintiff is attempting to imposed liability upon Defendants based both on his conditions of confinement and on Defendants' failure to protect him from harm. The Court addresses both theories of liability in turn.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In order to state a claim for violation of the Eighth Amendment, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Defendants submit evidence that as a result of the "R" suffix, Plaintiff complains he received a higher classification score, could not have family visitation, could not work outside the secured perimeter, and he was afraid of being assaulted by other inmates. (UF 41.) Defendants argue that they are entitled to summary judgment on the Eighth Amendment conditions of confinement claim because the assignment of the "R" suffix and the resulting increase in custody status, elimination of family visitations, and loss of opportunities to participate in programs and privileges are not sufficiently grave to rise to the level of an Eighth Amendment violation.

The Court finds that Defendants have met their initial burden of informing the Court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

Plaintiff submits no argument in opposition and the Court finds that there is no evidence demonstrating a genuine issue of fact as to whether the conditions complained of are sufficiently grave to constitute a violation of the Eighth Amendment. Hudson, 503 U.S. at 9.

With respect to any separate claim of liability based on a failure to protect Plaintiff from harm, Defendants argue that a generalized fear of attack by other prisoners who learn of Plaintiff's R suffix classification does not rise to the level of a constitutional violation. Assigning an inmate an R suffix does not amount to a constitutional violation, Farmer, 511 U.S. at 837-45, and again there is no evidence creating any triable issue of fact as to whether any Defendant failed to protect Plaintiff from harm.

Finally, Defendants argue that they did not act with deliberate indifference to a serious risk of harm to plaintiff. They submit evidence that Defendants Cotta, Guinn, and Mendoza-Powers never learned of the error with Plaintiff's classification history, and that Defendant Escobar learned of the error only after he began researching the issue. (UF 23-32.)

Plaintiff has no evidence that any of the Defendants intentionally applied the R suffix to him knowing that he had not been convicted of a sex crime. (UF 42.) The Court finds that there exists no material question of fact as to whether Defendants knew of and disregarded a substantial risk of serious harm to Plaintiff. Accordingly, Defendants are entitled to dismissal of the Eighth Amendment claim(s) against them.

### C.     Qualified Immunity

In light of the Court's recommendation that Defendants' motion for summary judgment be granted, the Court does not reach Defendants' further argument that they are entitled to dismissal on qualified immunity grounds.

## V.     Conclusion and Recommendation

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment, filed April 24, 2009, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **fifteen (15) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:     **November 12, 2009**                    **/s/ Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE